# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRENT ADLER, | CASE NO. 1:10-cv-01269-SKO PC |
| Plaintiff, | SCREENING ORDER DISMISSING CERTAIN CLAIMS WITH PREJUDICE AND GRANTING LEAVE TO AMEND REMAINING CLAIMS |
| v. | |
| WARDEN W. J. SULLIVAN, et al., | (Doc. 1) |
| Defendants. | THIRTY-DAY DEADLINE |

**Screening Order**

**I.      Screening Requirement**

Plaintiff Brent Adler, a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 on July 15, 2010. The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

///

1

1    A complaint must contain "a short and plain statement of the claim showing that the pleader
2 is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but
3 "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements,
4 do not suffice," <u>Ashcroft v. Iqbal</u>, ___ U.S. ___, ___, 129 S.Ct. 1937, 1949 (2009) (citing <u>Bell</u>
5 <u>Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)), and courts "are not required
6 to indulge unwarranted inferences," <u>Doe I v. Wal-Mart Stores, Inc.</u>, 572 F.3d 677, 681 (9th Cir.
7 2009) (internal quotation marks and citation omitted).  While factual allegations are accepted as true,
8 legal conclusions are not.  <u>Iqbal</u>, 129 S.Ct. at 1949.

9    Under section 1983, Plaintiff must demonstrate that each defendant personally participated
10 in the deprivation of his rights.  <u>Iqbal</u>, 129 S.Ct. at 1949; <u>Jones v. Williams</u>, 297 F.3d 930, 934 (9th
11 Cir. 2002).  This requires the presentation of factual allegations sufficient to state a plausible claim
12 for relief.  <u>Iqbal</u>, 129 S.Ct. at 1949-50; <u>Moss v. U.S. Secret Service</u>, 572 F.3d 962, 969 (9th Cir.
13 2009).  The mere possibility of misconduct falls short of meeting this plausibility standard.  <u>Iqbal</u>,
14 129 S.Ct. at 1949-50; <u>Moss</u>, 572 F.3d at 969.

15 **II.    Plaintiff's Complaint**

16    **A.    Allegations**

17    Plaintiff brings this action against prison officials at the California Correctional Institution
18 (CCI) for denial of adequate exercise between January 9, 2006, and December 9, 2008.  Plaintiff
19 arrived at CCI on January 9, 2006, to serve a Security Housing Unit (SHU) term.  Plaintiff was
20 classified approximately two weeks later and assigned group yard, which resulted in the receipt of
21 7 hours of outdoor exercise total, three days a week.  For the two-week period pending that
22 classification decision, Plaintiff did not receive any exercise.  Plaintiff remained on the 7-hour
23 schedule for an unspecified length of time.

24    On May 23, 2006, Plaintiff was transferred out from CCI for court proceedings.  Around that
25 time, prison officials cancelled the Wednesday morning exercise session.  The exercise schedule
26 rotated weekly between Tuesday/Thursday and Wednesday/Friday sessions, with morning and
27 afternoon sessions also rotating.  Plaintiff received 4 ½ hours of outdoor exercise per week except
28 ///

1  when the schedule rotated around to the week of the cancelled Wednesday morning session and during that week, he received exercise once for approximately 2 to 3 hours.[1]

On June 30, 2006, Plaintiff returned to CCI following court proceedings, and he again went without any exercise pending classification, which occurred on July 12, 2006. Plaintiff was placed on a caged "IEM" yard and he remained so assigned until September 6, 2006, during which time he received 145 minutes of outdoor exercise per week.[2]

On September 6, 2006, Plaintiff was placed back on group yard with a rotating exercise schedule. Plaintiff received 4 ½ hours of outdoor exercise, two days a week, except for when the schedule rotated around to the week of the cancelled Wednesday morning session. During that week, Plaintiff received 2-3 hours of exercise, once a week. Plaintiff remained on this schedule until June 7, 2007, at which time he was moved to a different building for non-punitive reasons.

After Plaintiff was moved to a different building, he received no exercise pending classification, which occurred on June 20, 2007. Plaintiff was placed back on group yard and he received between 4 and 5 hours of outdoor exercise per week, again on the Tuesday/Thursday and Wednesday/Friday rotation with morning and afternoon sessions also rotating. As occurred previously, the Wednesday morning session was cancelled, resulting in one week per month in which Plaintiff only exercised one day a week for between 120 and 150 minutes. During that week, Plaintiff would get outdoor exercise on Thursday, with the next session not occurring until Friday of the following week. Plaintiff remained on this schedule from June 20, 2007, to September 3, 2008.

On September 3, 2008, Plaintiff was placed back on an "IEM" yard where he received 120 minutes of outdoor exercise per week. Plaintiff remained on that schedule until November 5, 2008, at which time he was transferred from Facility IV-B SHU to Facility IV-A Administrative Segregation (Ad-Seg) pending release to general population, which occurred on December 9, 2008.

---

[1] Plaintiff's allegations are inconsistent as to when the Wednesday morning session was cancelled. Plaintiff alleges that the cancellation occurred in the summer of 2006, but his later allegations suggest he was on this schedule prior to being transferred out of CCI on May 23, 2006. (Doc. 1, Comp., ¶¶10-12.)

[2] An "IEM" yard is a caged yard, approximately one-hundred fifty square feet in size.

For the approximately 4 ½ weeks Plaintiff was in Ad-Seg pending release to general population, he did not get any outdoor exercise.

### B. Eighth Amendment Claim for Denial of Exercise

#### 1. Legal Standard

"[W]hile conditions of confinement may be, and often are, restrictive and harsh, they 'must not involve the wanton and unnecessary infliction of pain.'" Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (quoting Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392 (1981)). The Eighth Amendment, which protects prisoners from inhumane conditions of confinement, Farmer v. Brennan, 511 U.S. 825, 833, 114 S.Ct. 1970 (1994), is violated when prison officials act with deliberate indifference to a substantial risk of harm to an inmate's health or safety, e.g., Farmer, 511 U.S. at 828; Thomas v. Ponder, 611 F.3d 1144, 1151-52 (9th Cir. 2010); Richardson v. Runnels, 594 F.3d 666, 672 (9th Cir. 2010).

Two requirements must be met to show an Eighth Amendment violation. Farmer, 511 U.S. at 834. First, the deprivation must be, objectively, sufficiently serious. Id. (quotation marks and citation omitted). The objective component is contextual and responsive to contemporary standards of decency. Hudson v. McMillian, 503 U.S. 1, 8, 112 S.Ct. 995 (1992) (quotations marks and citation omitted). Extreme deprivations are required to make out an Eighth Amendment conditions-of-confinement claim. Hudson, 503 U.S. at 9 (quotation marks and citation omitted). Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. Id. (quotation marks and citations omitted).

Second, prison officials must have a sufficiently culpable state of mind, which for conditions-of-confinement claims is one of deliberate indifference. Farmer, 511 U.S. at 834 (quotation marks omitted). Prison officials act with deliberate indifference when they know of and disregard an excessive risk to inmate health or safety. Farmer, 511 U.S. at 837 (quotation marks omitted). Thus, prison officials may be held liable under the Eighth Amendment for denying humane conditions of

///

confinement only if they know that inmates face a substantial risk of harm and they disregard that risk by failing to take reasonable measures to abate it. Id. at 847 (quotation marks omitted).

Inmates have a constitutional right to exercise and the denial of out-of-cell exercise for an extended period of time is sufficiently serious to state a claim under the Eighth Amendment. Thomas, 611 F.3d at 1151-52. Short-term, temporary deprivations of exercise without medical effects, however, are not sufficiently serious to support an Eighth Amendment claim. Thomas, 611 F.3d at 1155; Norwood v. Vance, 591 F.3d 1062, 1070 (9th Cir. 2010); May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997); Allen v. Sakai, 48 F.3d 1082, 1088 (9th Cir. 1994).

### 2. Time Periods With No Outdoor Exercise

Plaintiff challenges the amount of outdoor exercise he was given during an approximately three-year period, which varied, with a number of interruptions caused by Plaintiff's program/classification changes. The four periods of time in which Plaintiff received no outdoor exercise were all short in duration and all involved a temporary suspension in Plaintiff's regular program while Plaintiff awaited classification following: (1) his arrival at CCI; (2) his arrival back at CCI following a court appearance; and (3) two building moves, the second of which preceded Plaintiff's release to general population after completing a SHU term. For the reasons that follow, the Court concludes that the deprivations complained of were not sufficiently serious to meet the objective element of an Eighth Amendment claim and Plaintiff's claim therefore fails as a matter of law as to those time periods.

Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights. Bell v. Wolfish, 441 U.S. 520, 545-46, 99 S.Ct. 1861 (1979) (citation and quotation marks omitted); also Hudson v. Palmer, 468 U.S. 517, 524, 104 S.Ct. 3194 (1984). It is well-established that the problems that arise in the day-to-day operation of a corrections facility are not susceptible of easy solutions, and prison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and maintain institutional security. Bell, 441 U.S. at 545-46 (quotation marks omitted); also Whitley v. Albers, 475 U.S. 312, 321-22, 106 S.Ct. 1078 (1986);

///

Rhodes v. Chapman, 452 U.S. 337, 348-51, 101 S.Ct. 2392 (9th Cir. 1981); Noble v. Adams, 636 F.3d 525, 529 (9th Cir. 2011); Norwood, 591 F.3d at 1066.

Three of the four periods lasted approximately two weeks, and the final period lasted approximately one month and immediately preceded Plaintiff's release to general population. These periods marked temporary, short-term cessations of outdoor exercise and they arose from changes to Plaintiff's housing or custody status which required classification decisions by prison officials charged with the challenging task of ensuring the safety and security of Plaintiff, other inmates, staff, and the institution itself. These four time periods are precisely the sort which federal courts should decline to second-guess lest courts become involved in micromanaging prisons, a duty which they are ill-suited to perform. See, e.g., Sandin v. Conner, 515 U.S. 472, 482-83, 115 S.Ct. 2293 (1995) (disapproving of the involvement of federal courts in the day-to-day-management of prisons); Turner v. Safley, 482 U.S. 78, 84-5, 107 S.Ct. 2254 (1987) (discussing principle of judicial restraint and deference to prison officials); Procunier v. Martinez, 416 U.S. 396, 405, 94 S.Ct. 1800 (1974) (courts are ill-equipped to deal with prison administration and they should not second-guess expert administrators); Norwood, 591 F.3d at 1070 (declining the plaintiff's invitation to micromanage officials whose expertise far exceeded the court's); LeMaire v. Maass, 12 F.3d 1444, 1454 (9th Cir. 1993) (scrutiny of prison conditions must be evaluated against the background of inmate violence and federal judges' limited competence to micromanage prisons). Accordingly, the Court finds that the four short-term deprivations of exercise pending classification were not sufficiently grave to form the basis of an Eighth Amendment claim, and Plaintiff's claim arising from the denial of all exercise during those four periods of time is dismissed, with prejudice, for failure to state a claim.

### 3. 2 to 7 Hours of Outdoor Exercise

#### a. 7-Hour Exercise Period

Left are the other time periods, which range between 2 and 7 hours of outdoor exercise per week and from 1 to 3 days per week. There is no bright line in terms of how many hours of out-of-cell exercise per week satisfy the Constitution. Noble, 636 F.3d at 527 (no outdoor exercise or other privileges for approximately fifteen months); Hebbe v. Pliler, 627 F.3d 338, 343-44 (9th Cir. 2010) (inmate permitted out of his cell for only eight hours a week and impermissibly required to choose

6

between exercise and law library access during those hours); Thomas, 611 F.3d at 1151-52 (no out-of-cell exercise for thirteen months); Pierce v. County of Orange, 526 F.3d 1190, 1211-13 (9th Cir. 2008) (at least two days a week for at least two hours total per week sufficient exercise); LeMaire, 12 F.3d at 1457-58 (no out-of-cell exercise for most of a five-year period); Allen, 48 F.3d at 1087 (in-cell confinement for almost twenty-four hours a day and forty-five minutes of outside exercise per week for a six-week period); Spain v. Procunier, 600 F.2d 189, 199 (9th Cir. 1979) (fewer than five hours of exercise per week and no outdoor exercise for some inmates over a period of years). However, the Court has no difficulty finding that as a matter of law, 7 hours of outdoor exercise per week, 3 days a week, is not a condition of confinement so grave that it runs afoul of the Constitution. Plaintiff's claim arising from that time period, to the extent Plaintiff is pursuing such a claim, is dismissed, with prejudice.[3]

           **b.**     **2 to 5 Hours of Exercise**

                  **i.**     **Objective Element**

With respect to the remaining periods of time, determining what constitutes adequate exercise is a situational, fact-specific inquiry which requires consideration of the inmate's conditions of confinement. Pierce, 526 F.3d at 1212 (inquiry requires consideration of: (1) the physical characteristics of the cell and the prison and (2) the length of time the inmate is subjected to those conditions); Spain, 600 F.3d at 199-200 (affirming district court's order that outdoor exercise was required and discussing exhaustive factual inquiry undertaken by the district court in finding an Eighth Amendment violation). In Pierce, the Ninth Circuit declined to set a constitutional minimum for weekly out-of-cell exercise, but it held that while 90 minutes was not sufficient for pretrial detainees in administrative segregation who spent twenty-two or more hours a day in their cells for between 110 and 312 days, at least 2 hours total at least twice a week was sufficient to correct the constitutional violation. Pierce, 526 F.3d at 1212-13. Certainly, convicted prisoners such as Plaintiff are not entitled under the Constitution to treatment more considerate than that which meets the constitutional minimum for pretrial detainees. City of Revere v. Massachusetts General Hosp., 463

---

[3] It is not clear if Plaintiff is alleging a constitutional violation based on this exercise schedule or only on the schedules which fell below this level of exercise.

U.S. 239, 244, 103 S.Ct. 2979 (1983); Oregon Advocacy Center v. Mink, 322 F.3d 1101, 1120 (9th Cir. 2003); Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1187 (9th Cir. 2002). Thus, in light of Pierce, Plaintiff may be unable to prevail on an Eighth Amendment claim so long as he received 2 hours of out-of-cell exercise per week at least twice a week.

However, Plaintiff's complaint is lacking sufficient factual support to make a final determination. Plaintiff is a SHU inmate and he alleges only that he was held in extreme isolation and that he suffered from depression, claustrophobia, headaches, mental regression, muscle atrophy, ligament pain, and vascular problems. These allegations are very general and vague in terms of the conditions of confinement Plaintiff was subjected to and how his medical issues were related, if at all, to lack of exercise. Notably, Plaintiff was receiving ample exercise during some time periods at issue yet his general health complaints span the entire three-year period. As a result, the Court finds that Plaintiff's general allegations are insufficient to support a plausible claim that he was subjected to conditions so grave that they constituted a substantial risk of harm to his health.

### ii.     Subjective Element

Plaintiff must also allege sufficient facts as to the second element of his claim, which requires a showing that prison officials acted with deliberate indifference. Farmer, 511 U.S. at 834. Under section 1983, Plaintiff must demonstrate that each named defendant *personally participated* constitutional violation complained of. Iqbal, 129 S.Ct. at 1937; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones, 297 F.3d at 934. Thus, Plaintiff must link the named defendants to actions or omissions which support the claim that they *knowingly disregarded* a substantial risk of harm to Plaintiff by denying him adequate out-of-cell exercise.

Among those named as defendants are current warden Fernando Gonzales and those involved in classifying Plaintiff and responding to inmate appeals regarding the exercise schedule. The current warden may not be held liable for events which occurred between 2006 and 2008, prior to his occupying the position. Further, simply identifying those who were supervisors, classification committee members, and/or appeals coordinators is insufficient to support a claim. Accordingly, the Court finds that Plaintiff fails to meet the subjective element of his Eighth Amendment claim

because he has not linked the named defendants to the actions or omissions suggesting deliberate indifference.

Plaintiff will be permitted to amend and in doing so, he should note that liability may not be imposed on supervisory personnel under the theory of respondeat superior, Iqbal, 129 S.Ct. at 1948-49; Ewing, 588 F.3d at 1235, and they may only be held liable if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them," Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); accord Starr v. Baca, 633 F.3d 1191, 1196-97 (9th Cir. 2011); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009); Preschooler II v. Clark County School Board of Trustees, 479 F.3d 1175, 1182 (9th Cir. 2007); Harris v. Roderick, 126 F.3d 1189, 1204 (9th Cir. 1997).

Further, denying a prisoner's administrative appeal generally does not cause or contribute to the underlying violation. George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007) (quotation marks omitted). Because prison administrators cannot willfully turn a blind eye to constitutional violations being committed by subordinates, Jett v. Penner, 439 F.3d 1091, 1098 (9th Cir. 2006), there may be limited circumstances in which those involved in reviewing an inmate appeal may be held liable under section 1983. However, the mere existence of an inmate appeals process does not create a protected liberty interest upon which Plaintiff may base a claim that he was denied a particular result or that the appeals process was somehow deficient, Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988), and therefore, if Plaintiff seeks to impose liability on those who reviewed his appeals, he must clearly allege the requisite linkage between the violation complained of and the individual's involvement, Iqbal, 129 S.Ct. at 1949; Jones, 297 F.3d at 934.

### III. **Conclusion and Order**

For the reasons set forth herein, the Court finds that Plaintiff's complaint fails to state any claims upon which relief may be granted under section 1983. Plaintiff's Eighth Amendment claims arising from:(1) the four temporary, short-term periods in which he did not get any outdoor exercise and (2) the time period in which he got 7 hours of weekly outdoor exercise, are dismissed, with prejudice, for failure to state a claim. Plaintiff is granted leave to amend to cure the deficiencies in

his remaining Eighth Amendment claims. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000); Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). In amending, Plaintiff may not change the nature of this suit by adding new, unrelated claims. George, 507 F.3d at 607 (no "buckshot" complaints).

Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights, Iqbal, 129 S.Ct. at 1948-49. Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level. . . ." Twombly, 550 U.S. at 555 (citations omitted).

Finally, an amended complaint supercedes the prior complaint, Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987), and it must be "complete in itself without reference to the prior or superceded pleading," Local Rule 220. Therefore, "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." King, 814 F.2d at 567 (citing to London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981)); accord Forsyth, 114 F.3d at 1474.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a complaint form;
2. Plaintiff's Eighth Amendment claim arising from the four temporary, short-term periods in which he did not get any outdoor exercise is dismissed, with prejudice, for failure to state a claim;
3. Plaintiff's Eighth Amendment claim arising from the time period in which he got 7 hours of weekly outdoor exercise is dismissed, with prejudice, for failure to state a claim;
4. Plaintiff's remaining Eighth Amendment claims are dismissed, with leave to amend, for failure to state a claim;
5. Within **thirty (30) days** from the date of service of this order, Plaintiff shall file an amended complaint; and

///

///

6. If Plaintiff fails to file an amended complaint in compliance with this order, this action will be dismissed, with prejudice, for failure to state a claim.

IT IS SO ORDERED.

Dated:     **June 27, 2011**                                    /s/ Sheila K. Oberto
                                                      UNITED STATES MAGISTRATE JUDGE